Good morning, Your Honors. Jan Kurowski on behalf of Appellant Shawna Whitaker. May it please the Court. I'm going to split, we're going to split up our time, reserve about 8 minutes for, 4 minutes for rebuttal. I'm going to argue the factual errors and co-counselors are going to argue the errors of law. The detective in this case, Detective Grant, was not a believable witness, although the district. You say that, but we're not going to judge credibility. Well, Your Honor, on a clear error review, looking at what the court, the district court findings were and opinion, it's our position that the court raised numerous issues relative to the detective's credibility. He called him. I think that's true, but he came out believing him. Well, he came out implicitly believing him. It's our position that the attorney Not implicitly. He came out in the order saying, for example, he recognized there may have been some misrepresentation concerning the comparable properties, recognized he was concerned about the prior cases with the allegation of moist stems, et cetera. But as Judge Newman points out, he resolved that credibility issue and those issues in favor of the government. There's a question about that. He resolved that. Why is it clear error, since he ultimately was put, the magistrate ultimately was put in and did have all of the information, why are we saying, why are you urging that this is clear error? The argument, Your Honor, is that implicitly by the decision, the district court found obviously in favor of the government, denied the motion. However, the indicia of the bases for that finding were not addressed. It's that the government, the detective grant had so many bases for finding the lack of credibility that the court did not discuss. It's our position that the court made the finding that, for example, the marijuana was fresh and moist. He has to have made that finding. I'm not asking the court to take judicial notice, but these cases were, these searches were done in Sacramento, California in the summertime with fresh, moist marijuana found in 40 searches. But I may have missed it. I remember in your brief you contended that there were numerous indications at the Franks hearing that didn't show up in the order. Was there ever any request for modification of the order, reconsideration to cover those issues? No, there was none made. But the argument is that the court found, for example, that it was an intentional material omission. The court also talked about, as I said, the 800-pound gorilla walking through the courtroom. I've never seen a judge make that kind of a comment during an open court at a hearing questioning a law enforcement officer's integrity. He certainly would be quite frank with you. I was on another panel that had a civil rights case in which the officer was a defendant, the same kind of case. And we agreed on that panel that he did not have qualified immunity. So I understand what you're saying. But I don't understand how we, sitting here without the people in front of us, can decide that he was incredible. Your Honor, we understand. We cited that case that the court found in a footnote, I believe, in our brief. Our position, though, is that if the question is what is 2 plus – if the answer is 4 and the court has come to that conclusion by adding up 6 and 3, our position is it's clear error, that is, that if he looked like a duck and he walked – I mean, to reduce it to its simplest level, if Grant looked, walked, and acted like a duck, the court called him a rooster. I've seen all the metaphors before today, huh? Pardon me? So far we've got math and we've got ducks. But the question is what do we have that says this is clear error? Implicit in the findings were a rejection of the contention that this officer had done this on numerous other occasions, whether that was an issue. The roaches that were found, the explanation offered a warrant you was not that strong. But nevertheless, the trial judge, the district judge had this all and came to a conclusion, evaluated the credibility. I'm still not hearing the precise clear error. I'm hearing ducks walking around, but not clear error. I understand. And our position is that the clear error, when the indicia of lack of credibility is lined up, the conclusion that the court drew, that is, that without marijuana – the court has to implicitly have found that there was marijuana found in the can, even though there were two cans there. The court did not even address the fact that there was a second can. There are citations in the briefs that there were two cans. My client testified at the hearing that the neighbor across the street continually took her can over to their side of the street. There were two cans there. The judge did not address that issue whatsoever. The judge said even if – there was no indicia of ownership of the can. And say – I come back to him saying he didn't address that issue. Nobody ever asked him. In other words, there was no request after the order came out. And by the way, you missed an issue here, was there? No, we didn't do that. But the argument on appeal is that there was clear error. Then can't we find implicitly that he determined that issue against you? Well, there is an argument to that effect. It's our position that when weighing the entirety of the factors that formed the bases that were presented at the hearing, the court drew the wrong conclusion, and clearly that was erroneous. For example, one of the more explicit and flagrant aspects of Detective Grant's investigation was, as we cited in the brief at the excerpt, page 14, there were at least three search warrant affidavits in which he obtained electric company records after submitting the search warrant affidavit to the magistrate. It just made no sense what he did. It was time after time there were factors that made him incredible. Can you help me? I'm just having a little – this is a difficult case. But I'm having a little trouble in understanding what finding it is of the district court that you say is clearly erroneous. There are at least three. First of all, our argument is that Detective Grant was not believable, and therefore there were not – there was not enough evidence that they could prove that. Believable in what respect? In what aspect of his case? One, that he found marijuana. It's our argument that the Court clearly erred in finding implicitly that fresh, green, moist marijuana was found in the Whitaker's garbage can. Two – But we had two witnesses to that, right? That's true. We had two detectives who said that, although they didn't know where the can was. They had the wrong dates. They had the – they had placards that were disabled placards they called license plates that went on and on and on. There's no question there were two witnesses, and there was a – and our witness said that she never put anything in it. And we had an exclusion of an expert who said that marijuana growers don't put marijuana in the trash. Nevertheless, in answer to your question, Your Honor, it's – there wasn't – there was plenty of evidence to show no marijuana. Even if there was marijuana, the trash can was not tied to the defendants. And lastly – Well, it was in front of the house. There were two in front of the house. That's the point. Okay. There were two in front of the house and no indicia, no bills, no anything. And – What is the – what is the finding that was clearly erroneous there? Well, the finding was that we lost, but the – What? Well, that the judge ruled that the – That was – is that a factual – No, it's – It's not that you were arguing facts. Well, the fact – well, the factual finding was that there – the arguments were there was no marijuana. Even if there was, it wasn't tied to the defendants. And lastly, that the more that the judge needed, that is, the power records, which Mr. Ballas will address right now, were unfair, inappropriate, and not unusually high. I think I've limited my time. I think that that's a good segue into you, co-counsel. Good morning, Your Honors. I'm going to take over where Mr. Kowalski left off. And even if you would accept Deputy Grant's finding, the judge's finding, that Deputy Grant found marijuana in the trash can in front of the Whitaker's house, why the suppression motion should have been granted. The affidavit basically contained two pieces of information to try to establish probable cause. One is that there was marijuana stems and leaves in the trash can outside of the Whitaker's house. The other piece of information is that the district court found in this case a Frank's violation, and the district – and the government does not dispute that. They do not argue that that was wrong. And what the district court found was a – was a violation was that the deputy essentially cherry-picked the comparable home records and used records from three homes that were significantly lower than the Whitaker's but didn't include records from two other homes that had the records that were much closer to the Whitaker's home. You know, I'm kind of interested in something, and maybe this is off-point, I don't know, but in looking at the record at 441 through 445 – 446, which includes all of the – includes the other two that were not alleged, it does seem like, and I'm not sure whether this is brought to the attention of the magistrate, the spiking on the – much more significant, it seems, not necessarily on the overall average, but the spikes. If you look at the – there's two spikes over 2,000 kilowatt hours, and other spikes, 18 and – which seems to be – and 19 close to it, so three or four times it's close to 2,000 kilowatt hours, and I don't really see that too much in the others. I understand this went on an average, but it does seem like there's some interesting spikes on your client's residence. Yeah, and I don't think that was specifically argued to the – I didn't know if it was ever put that way as opposed to just an average. I think it was argued more in – just in terms of the average. There was an argument that even the three comparable homes that was used in the affidavit were not really comparable, in that the Whitakers had a visible air conditioning unit outside. The other homes did not. The other homes had more shade tree. They had a porch overhang, so they would be expected to use less electricity than the Whitakers' home. Well, okay. The – on the point about the two other houses, let me – does the record show where they were in relation to the – I think they were all on the – all on the same street or in the same vicinity. We know the geography, because one thing that's troubling me here is that – is the issue of whether or not there was probable cause to think that this can belong to the – to the house. And if there were another house that it could have belonged to that had a similar kind of comparable power usage, it would – it would – it would reflect rather negatively on the – on the police. But I gather the record doesn't really indicate that those –  I think that – Or anywhere adjacent or nearby. No. I mean, the record indicates that there was a house right across the street that put its garbage directly across from the Whitakers' property. Right. Each of the other homes was about half an acre, as I see the lots. So that's a fair amount apart, correct? Yeah. And .77 on your clients. And so – So the only other house would be the house across the street. Right. Right. Now, the main argument here is – there's kind of two points to make. One is that if you accepted the Franks violation and put in the records from the two comparable houses, the power records then really do not give you anything to suggest an inference that the Whitakers were growing marijuana. The two highest houses were only 26 and 28 percent. The Whitakers was 26 and 28 percent higher. But what is the number that – I mean, I understand there have been other cases where it's been two times or three times or even more. What's the cutoff in your view? Well – The magistrate looks at it. It was, I think, 165 percent of some of the three, I think. And you're right, 126 percent of the two that weren't included in the Franks situation. So the magistrate looks at all that and says, look, you kept those two out. You shouldn't have done it. But where is the cutoff? Why is that not sufficient to say that's a sufficient increase? Well, I don't think there's any magic number that I can point to automatic cutoff. The two Ninth Circuit cases that have talked about it being sufficient have talked about it where the one house was twice as much, and the other time it was like almost in Huggins' case was about 400 percent more than the other houses. This Court in Clark rejected the use of power records to add to a probable cause analysis when the affidavit said that the house used unusually high amount and said that that conclusion alone was not sufficient to really add anything to the probable cause. And in this – so in this case, the cases we know that have found power records sufficient to add to the probable cause have generally been 100 percent or more. That's the Celestine and Huggins case. And the Olson case in the Eighth Circuit said that the house that was targeted by the search was three or four times that of the prior tenant. The ones that have found it insufficient have been kind of vaguer or closer to – closer to the amount of the targeted house. That's the Clark case that said unusually high. The Field case, which is a western district of Wisconsin district court, that said it was considerable and somewhat similar to past growth. I'm trying to get an idea of what you would say would be a – and maybe there isn't one and we have to take it on a case-by-case and it's unusual, not unusual. Is there any number that – you know, for example, here it was 165 percent over some of the houses. Well, it was 65 percent higher than the average of the five houses, but only 26 and 28 percent higher than two houses. And – Well, you know, this is odd because you have the garbage can there and spike in the electricity. We have cases that I guess the law – we have law that the garbage can alone isn't enough. And we have law that a spike that's not really high may not add much. So putting the two together, your problem is what – why is there not sufficient problem to podge the basis of the findings. And I guess you A, explain it, and B, could you tell me which authority you think gives us the most guidance on. Well, I think my argument is that when the power records are within 26, 28 percent higher than two out of five comparable houses, it really doesn't add anything to create an inference that that resulted, that increased power usage from growing marijuana, because there's so many other innocuous, innocent reasons, and that isn't a range of ballpark that you would expect. When it's, you know, double or two or three hundred times higher, then it's more suspicious. But I just don't think it really adds anything. Is there any burden in that hearing when the government comes in and says, okay, we've got 65 percent higher than the average, and we grant you we tried to – the officer – forgetting that for a moment, 26 percent is over the highest, is there any duty at all? Because I don't think the defense offered anything here in terms of the living conditions. There's speculation. There was a trailer out in front of one house, and they went around and about that. There were no power lines to the trailer, et cetera. But was there anything offered by the defense to say, yeah, we talked to people in the house, here's how many people, et cetera, or is there no burden on the defense there? Once the government comes forward with those numbers. There's a burden to go to that extent because, I mean, you're looking at what the officer knew or should have known at the time and what kind of analysis he did, what he looked at. I'm not sure you have to go into kind of the detail of asking each particular neighbor. The officer's sitting there in that Neverland. It's 65 percent higher, 75 percent – not the four times you talked about it, the two times. How does the officer know when he or she has enough? Well, I think it's just – overall, it's just the totality of the circumstances. Looking at it all, in this case, the defense did bring out information that the Whitakers had a visible air conditioning unit on top. Some of the comparable homes had shade trees. Let me – yes, let me ask you this, though. Assuming that there's marijuana there in the trash can, what should the – and there is a higher level of electricity usage. Did that go to the magistrate to issue the warrant? I understand it did. The – what went to the magistrate judge was it was 100 percent higher than the three comparable homes, but without excluding the – But when I – I guess what I'm just wondering is in terms of police work, what should the police have done here in order to get probable cause? Two things they should have done. One is they should have done a better analysis to determine that the comparable homes were really comparable and to be able to – and to – if they have the five homes, if he would have done it, all five homes. I think the police officer would say that alone really doesn't show much. But how did they get probable cause here? That's the interview alone? One thing he could have done was he could have went online and checked the square footage of the five homes. It's in here, isn't it?  What happened was the officer never checked that. Didn't go to the magistrate. Right. The defense actually presented an exhibit that showed the three comparable homes were smaller. But the – essentially the deputies should do more when it's only 20 percent, 26 percent, 28 percent more of two of the five comparables to really show that that extra usage was due to some equipment to use to grow marijuana indoors rather than other sources. Okay. The other thing the officer should have done was, which he didn't do, there was no information, no evidence at all, that that garbage can belonged to the Whitakers other than its proximity to the home. And the cases have generally said that that's insufficient to really show probable cause when there's marijuana or contraband in a garbage can. One of the cases, was it Briscoe or was it the one where there was a citation to the appellant's brief but the case itself didn't say you required additional bills, et cetera? You're correct. But it did say at page 908 of that opinion that the drugs were found in Briscoe's garbage. Right. So it implicitly assumes that it was his garbage. In the opinion there was nothing other than it being in front of the house, was there? In the opinion itself. In the opinion itself. No. Okay. But it accepts the implicit conclusion that it was his garbage because it says that it was found in Briscoe's garbage. And that's what was in the briefs. Before you were technically over time, but I wanted to ask you about the exclusion of the expert, because he would have helped you. Now, the government's reply is it was cumulative. That sort of thing had already been testified to. And the expert really couldn't tell the Court what the habits of a whole group of people were. What is your response to those two? Well, I think both of those are wrong. What the deputy grant said is that a sizable number of people that grow marijuana put parts of the marijuana plant in a garbage can. A sizable number don't. And then he says probably more don't than do. But his opinion was that he said. A majority, a larger number, do not put parts in the garbage. But a fair amount do. Yeah, a good amount do. He says sizable number. Now, the expert would have testified that it was highly unusual for anyone that was growing marijuana to put any parts in the garbage can because it's common knowledge in the community that officers are allowed to search the garbage can without a warrant and that they can get search warrants based on what's in a garbage can. Now, how would the expert have known this? How would the expert have known? Habits of the marijuana growers. I think by interviewing a number of people. He had written books on the subject of marijuana growing. The basis of his knowledge was not contested. What the district court excluded him on was on that it was irrelevant. And you were also saying his testimony would not have been cumulative. Right. True? Right. The district court said it was cumulative because Deputy Grant had already said that. But it really was different. It was much more different in degree and quality. I see. Thank you. Thank you. Thank you. Excuse me. You have the appellants have used their time. But if you feel compelled to give a response, we'll give you a minute. All right. Do you have a duck or a swan? Your Honor, neither. I'm Ken Malikian. Excuse me. Well, actually, I'm an assistant United States attorney for the Eastern District of California. And, of course, I represent the United States in this matter. Your Honor, I briefly want to touch upon all of the issues that the defendants have in their argument. I am going to try not to reiterate anything that's in my brief. But there are a few points that I'd like to make in addition to what I've already provided to court. With regards to the implied credibility finding, I just want to indicate, as the court has, that it wasn't just Detective Grant who testified that marijuana, a recently cut marijuana plant, was found in the garbage can at issue, but his supervisor, Sergeant Kevin Bacina, also testified that marijuana was found in that trash can. They were the only two people who were present when that trash can was searched, and they both testified that marijuana was found in it. They searched the trash can in April of 1999, and they testified four-and-a-half years later in October of 2003. And even though four-and-a-half years had elapsed, they both stated firmly. But they couldn't remember who found it or a number of things about it that was to the trash can. Let me tell you what kind of bothers me here. If you look at this whole situation, the district judge said we're looking at every or the corporal said we're looking at the whole thing. The finding of the marijuana wasn't enough because it didn't tie the trash can and so it needs, in addition, the higher spikeage. But with respect to the finding of the marijuana, supposedly they find the wet stems, et cetera, which he had testified to in about, I don't know how many, 23 or 40 warrants. There's a claim later that somehow the stems shrunk 50%. Now, I've had flowers now. I don't know anything about grass, but I've had flowers go die on me, and I've never seen the stems shrink to 50% of their size. Yeah, they wilt. The evidence is held for three or four weeks. There's nothing to tie those trash cans, as the corporal found. We have to accept the findings to some extent. Then we turn to the spikeage. It's at best iffy, as counsel has pointed out, plus there's a deliberate attempt not to put in the two highest. That whole thing kind of flunks, if we look at the whole circumstances, the argument can be made that kind of flunks the smell test here. I mean, it's troubling. Your Honor has asked a lot of questions, and I'll try to address them as best as I can. Maybe not all right now, Your Honor, but hopefully in the next 17 and a half minutes I can address all of them. I don't think any of that was lost upon Judge England. He noted all of that, and he indicated in a footnote, in fact, that – well, actually two footnotes – that there were things that troubled him about this case, but he had taken them into consideration. What he did is what we have to do, or what the court has to do in this kind of situation. You review the search warrant affidavit in its entirety, in its totality. And, of course, there were two major portions of that. That was the discovery of the marijuana. That's portion number one. And the power usage, that's portion number two. And to start to answer some of the Court's question, with regards to detail, Detective Grant indicated that he believed that it was he who found the marijuana, but he wasn't certain. Detective Bacena said he believed it was Detective Grant, but he wasn't certain. Your Honor, four and a half years had passed, and these two deputies had searched well over 100 trash cans. And I would submit to the Court that the details may be difficult to recall, but they both firmly stated that there was marijuana in the trash can. Detective Bacena – But can't we say some of the devil is in the details? In looking at the picture overall, we could conclude there was clear error here. That's what I was getting to. We can take each one separately. But if we look at the whole picture, and you're right, as Judge Noonan has pointed out and Chief Judge Shorter, we give a good deal of deference to the finding below. But there is the rule of clear error, and there's an awful lot of strange handling of evidence, strange results, pictures that don't match the stems, deliberate hiding of, or at least intentional hiding of evidence that was not – that would have undercut the position on the comparison. So if you take all that – and what I'm doing is taking it all together. I know you can explain each one, and I have read it, but is there anything we can – how do you react to taking it as a whole? This looks a little bit – Your Honor, the Court has to take it as a whole. Certainly. And Judge Englund took all of this that was presented to him in its totality and as a whole. And I'm not going to defend some of the actions. There was no excuse for leaving those two comparable houses out. None. That can't be defended. There was no reason to have – I won't call it that. I mean, it was for the purpose of misleading the Court. Your Honor, whatever the purpose, it – It was intentional. It was intentional, yes. It was more than reckless. It was intentional and should not have been done. And Franks clearly states that if that's the case, then the Court has to add that information to the search warrant affidavit, which the government concedes, of course. And at that point, the totality of the search warrant affidavit has to be examined with those two homes included. Now, with regards to the issue in this case, Judge Englund was faced with having to make a determination as to whether or not there was marijuana found in that garbage can. And he looked at everything that was presented to him. Everything that the Court has pointed out was presented to him. But he didn't let the expert testify. And as counsel just pointed out, the fact that Grant had testified on this did not make the expert's testimony cumulative. You would agree with that, wouldn't you? It wasn't cumulative per se. It was on the same issue. Well, let's just say it was. It wasn't cumulative. And why, if the expert had a fair amount of familiarity with the growing of plants, why couldn't he testify as to what marijuana growers do? And wouldn't that have seriously undermined Grant's testimony? Your Honor, Detective Grant testified that marijuana growers as a whole do not put marijuana in their garbage. I understand that. But so this would have disputed that. No. I think he said the same thing, that marijuana growers do not. But he was saying a substantial number do, if I understand. No. He never said that. What he said in actuality was, and I don't want to interrupt the Court if there's a further question, but what Detective Grant said was when they do, it's usually because of carelessness, and it's not a practice that they normally do. And the Court has to remember that there were approximately 120 trash cans that were searched, and they weren't just searched on one occasion. The detective testified clearly that if they found no evidence of marijuana on the first trash can search, they would go and do a second search. And if they didn't find any marijuana on that second search, they would sometimes go and do a third search. Well, Grant certainly found an awful lot of cans that had marijuana in it. About one-third. About one-third. About 40 out of the 120. And I had a lot more prosecutions on the basis of that evidence. I'm sorry. Have you had a lot more prosecutions of marijuana growers on Grant's evidence? There were other prosecutions, yes, Your Honor. There were what? There were other prosecutions, yes. Okay. You know, I don't know the exact number. I want to say about a couple dozen. A couple dozen, with Grant as the witness? I don't know if Detective Grant was the primary witness in each of these. A witness. A witness, yes. Yes. Again, though. What do we do with the fact that, and I understand the explanation later, that none of the roaches that were found were included in his report? One would think, and I understand he says, well, I didn't include that because I felt that that shows smoking, not growing. But if you're smoking it, you're probably, I mean, doesn't that lend weight to growing? I mean, this whole thing, I mean, he uses a sort of standard allegation about finding the fresh, moist stems. He doesn't mention the roaches. It would seem that would be fairly important. I mean, I'm not sure of that explanation. And I understand everything that was before the court below, but still. Your Honor, I can't disagree with the court. If I were Detective Grant, I would have included that. I don't think it adds much, but it certainly doesn't hurt a magistrate in making a probable cause finding. Well, if they were saying they were using it for medicinal purposes, they would have used it there, and that would indicate they were using it there. That's fine.  No, it doesn't get mentioned. And I think that the explanation, and I make it an inference from what is clearly in the record, is that he basically had a template where the blanks were filled in on the search warrant. I don't think Judge England was particularly thrilled with that procedure, to have basically a cut-and-paste search warrant affidavit. I am not particularly thrilled with that procedure, but it is not an illegal procedure, as long as the blanks are filled in correctly. Now, if he had indicated that there were roaches in the trash, I don't see as to how it would have affected the magistrate's determination one way or the other. I don't know about that, but it just seems, in terms of an intentional attempt to defraud, I mean, you know, it's kind of a weak explanation later. It just, I mean, the whole thing, it's very troubling in terms of what was mentioned, what was not. Granted, this is years down the road, but in terms of the handling, what I'm getting to is the handling of the cannabis, and in the handling of this, I mean, and then the rather weak explanation that I thought weak, that because it was in front of an air conditioner for three weeks, it shrunk to half its size. The whole thing seems, and then the way that the evidence was handled, granted this is well down the road, but it wasn't booked immediately. It was sitting in an envelope under an air conditioner for, what, three weeks? Your Honor, yes. In pictures, it didn't look like what he said he found. Yes. What the Court had before it down below was, in addition to what the Court has pointed out, the testimony of the two, excuse me, the two deputies that I've indicated to the Court, and the basically lack or the failure to contradict that this marijuana was in the trash can. I would submit to the Court that the defense had every opportunity to not only impeach Detective Grant, but to present evidence that marijuana was not in the trash can. So in your view, in terms of the case, the key finding is, which is implicit, I guess, is that there was marijuana in the trash can? Yes, and it's implicit. I'm sorry. It's implicit. Judge Englund never stated that I find the witness to be credible, but he did clearly in his order start with the fact that there was marijuana in the garbage. So in order to reverse, is it your view that we would have to find that finding clearly erroneous? Yes. To reverse those findings, they have to be found as clearly erroneous. And on the state of the record, with the only two witnesses that we have. Let me ask you. I'm sorry. No, go ahead. He said the finding was, he said he agreed they found the marijuana, but that was not enough because of the lack of time in the trash can. So it required the finding on the overusage of power. That's correct. So if we concluded that those were there, that would not be enough, would it, to reverse here? Because we would also have to agree on the usage. Because he said both, he didn't say either one. He said the one was not enough. I think I have to make a concession here. I think without the marijuana and the garbage, I don't think there's probable cause. The judge counted on, excuse me, the judge relied upon both. Right. But I don't think that. But he said neither was enough. Right, by itself. He said you needed both. As a factual question. Yes. The finding of the marijuana in the can is critical. Yes. As a legal matter, the relevance of the, of the, that the weight to be given, if any, to the, to the electrical records is, is critical. Right. Your Honor, I'm not willing to concede that. In my brief, I, I discussed the very few cases that have addressed this issue. The Eighth Circuit, the Briscoe Court, has, has clearly stated that when a marijuana was found in a trash can in front of a target home, that in and of itself was enough to search that home for evidence of marijuana cultivation. The Illinois Court of Appeals and Burmeister disagreed. And the California Court of Appeals in the Thus case never was really clear as to its position on it. I would submit to the Court, in, in looking at the marijuana and the garbage can, we have to consider the gate standard. Is there a fair probability that evidence or, or contraband will be found in a home where marijuana is found inside a garbage can directly in front of a house? And I think the Briscoe case had this right. If a casual observer is driving down the street and he sees trash cans in front of people's homes, he is going to reasonably infer that the trash can in front of each home belongs to that home. Well, doesn't that depend on the placement of the homes, too, and the density? For example, I've seen streets here in this city where it would be difficult to ascertain which cans belong to which home, whereas, now, granted, here the officer testified they are spread apart and it looks like they're one-half acre lots. But wouldn't that be situation specific? Your Honor is correct. If, if, if the homes, if we were in apartments or, or condominiums or even very small lots, that could be an issue. Here we're in an area where the lots were relatively large. And there was one trash can. Counsel stated that there were two trash cans in front of the house. I don't believe that's correct. I don't believe there was any testimony that there were two trash cans in front of that house. There was testimony that the lady across the street, for some unexplained reason, took her trash across the street to the Whitakers to place it out there. But there's no testimony that when Detective Grant got to that residence that there were two trash cans there. There was just one. And I would submit to the Court that it is not only reasonable to infer that in an area such as this where you have large lots, that a trash can in front of a house belongs to that house. There's an excellent probability, not a fair probability, an excellent probability that that trash can belongs to the house in which it is in front of. Let me, in, in the record before us, there's evidence that somebody else put their trash can there as well. As I have in custom. Not on that day. There's no evidence that it was out there on that day. And there was in the, in the, there was only one can there that day? That's the state of the record. The state of the record is twofold. Your Honor is correct. The state of the record that is a custom and habit, the lady crossed the street, placed her garbage can there. But there is nothing in the record to indicate that she did so that day. Can I return to the excluded expert for a minute? Sure. This was a proceeding before Judge England. Is that right? That's correct. So when he says it's not relevant, he's saying I'm not going to listen to it. Now, of course, if he really didn't think it was relevant, but had listened to it, it wouldn't have much effect on his decision. But maybe he should have taken it into account, considering all the other difficulties in the government's case. Shouldn't he have taken it into account? Your Honor, I submit no. I can't think of an evidence code section which permits this kind of testimony. There is certainly an evidence code section which states that if a person acts a certain way and has a habit or custom, that that can be introduced to show that on this occasion he acted in conformity with that habit and custom. You can't say, talk about community custom or? No, the statute doesn't talk about community. It's custom in a business or whatever you want to call it, the marijuana growers, the class of some kind. Well, the statute doesn't indicate that. It's an individual thing. It's about a person acting in conformity with his or her habit or custom. That's not what he says. What he says here on page 448 is on paragraph 5. Based on the foregoing, it is my opinion that it is highly unusual for anyone to ever put fresh cannabis in their trash can under any circumstances. There was no challenge to his expertise. The question was relevance. So how is that any different than the officer testifying as to what people who grow drugs do in terms of putting it in the trash? Why is his testimony, as an expert, and that is undisputed, as far as I know in the record, no one questioned his expertise, and he recites his background. Why is that any less relevant than the officer testifying? And wouldn't it have gone to the officer's testimony? Your Honor, when Detective Grant offered that testimony, he was being examined by Mr. Panzer, the attorney for Mr. Whitaker. And it was a defense question as to how the practice of the government did not object. Okay. Now, Mr. Panzer offered this other evidence, and the government objected. Well, actually, the court objected, and the government agreed with the court that it wasn't particularly relevant. So that is the reason why you have the testimony from Detective Grant, because the defense asked for it and there was no objection to it. And I want to make another point also, just very briefly, about that expert's proposed testimony. Counsel in the reply brief also discussed the Baldwin case and indicated that the expert would have testified about the Baldwin case to impeach Detective Grant. Two problems. One is that when the offer of proof was made before Judge England, that was never mentioned. The only thing that was mentioned was he would testify that people in the cannabis community don't put marijuana in their garbage. Secondly, Detective Grant was not the affiant in the Baldwin case. And basically what you had was a situation where I believe it was Detective Jeffrey Potter was the affiant in that case. And Mr. Conrad, the expert, was going to utilize an affidavit written by Detective Potter to try to impeach what Detective Grant did in a completely different situation. And that's just not appropriate. So I would submit to the court that the only issue that should be before this court is whether or not Mr. Conrad should have been permitted to testify about the cannabis community. And I submit that it is irrelevant because there's no basis under the evidence code to permit that kind of testimony. I see that I only have 23 minutes. Let me ask you the same question I asked the other side. I'm curious. Assuming now with all five comps, you get an overall of, let's say, 1.26 or 126 percent, what's the cutoff? Why is that enough to say, uh-huh, that is probable cause? What if it was 1.05 percent, 1.10? I don't know. Where do you stand on that? Your Honor, where I stand is looking at the affidavit in its totality. And certainly we can compare past cases to this case, but there are going to be other parts of the affidavit. What point does it add? In other words, the court below said stretch can't sound enough. But to add it with this, do you have any position as to, I mean, because obviously the officer deliberately, intentionally left that out. Yes. And presumably for a reason. Because he was concerned it wouldn't look as strong. So does the government have any position at what point, would it at 110 percent, would that have been enough? No, I don't think at 110 percent it would have been enough. But I don't think we can draw a fair line. I don't think that I can possibly say that when you hit 145 percent, you have enough, but if you have 144 percent, you don't. We know that this Court has stated in the Celestine case that twice the average is sufficient. And that's the way the officer chose to phrase it, having omitted the relevant other facts. Yes. And again, I certainly wish he hadn't. I would have instructed him not to. If he hadn't. He was up here, right? Yes. I wish he were here to defend himself. And if he hadn't, there's a chance we may not even be here. If he had inserted that, he's wasted an awful lot of our time. We've used up more than yours. So. Thank you very much. Thank you. Just a few points. This case does fail the smell test, and I know it's highly unusual that the Court finds clear error in a case, but if there's ever a case that there was clear error, this is it. The cases talk about how clear error exists, even if there's record evidence in the record to support it, when the Court has a firm conviction that a mistake is made. And I want to bring out one point that has not been discussed at this argument. You're saying that the clear error is in the what? The clear error in that Deputy Graham found marijuana in the trash can. And the one point I want to make on why this is unbelievable, in addition to everything else that's already been discussed in the briefs, is that the prosecutor says that in 40 out of the 120 cases, he found marijuana in the trash can. And so 80 of them he didn't. But what that means is that by going to a gardening store that sells indoor equipment to grow stuff indoors, more than two-thirds of the people that they followed from that store, taking down the license plates and looking in the trash can, were growing marijuana. I think that's simply unbelievable, because in 40 of the cases they found marijuana in the trash can. But he also says, Deputy Grant, that the majority of the time people don't put marijuana parts in the garbage can. So that you have at least 40 other cases, according to Deputy Grant's testimony, that people that he followed were probably growing marijuana, but they just didn't find it. And that just is completely unbelievable. The second point I want to make on the next issue is that the undisputed evidence in the case was that both sides of the street put their garbage cans right in front of the house on the Whittaker side of the street. So that there was no way to tell if there was one garbage can there, whether it belonged to the Whittakers. How would the police officer supposed to know that? I guess that I don't see. Well, all they had to do was call and say, they did call and say, which day of the week does the Whittakers' trash get put out? All they had to do was say, what about the other side of the street? The other people on that street? What time, when do they put their trash out? They would have learned that they both put them out on Monday, and that if there's a trash can there, you can't tell whose it is. I'm curious. Didn't Officer Grant say there was only one can out there? And he said, I got there too late to see him put it out. It was already out there when I got there. But I don't remember him saying there were two. Deputy Grant, I think, testified about just seeing one can. The undisputed testimony from Mrs. Whittaker was that both sides of the street put their cans. When you say undisputed, if Deputy Grant said I only saw one can, it sounds like a dispute. It walks like a duck, talks like a duck, et cetera. I guess what I'm saying is undisputed. Even if you accept the Deputy Grant's testimony, you don't know whether that can came from the Whittakers or from across the street. Yes, but that's 20-20 hindsight, isn't it? No, it's what ---- I'd never ---- I wouldn't suppose that if I saw cans out in front that they would belong to somebody across the street. I don't think that's a reasonable assumption to make, especially in a little more rural communities where maybe, you know, you don't have garbage trucks going down both sides  of the street. And that's what the case has talked about. You can't just assume that trash that is close to a house belongs to that house. Thank you. You have your time. Thank you. Thank you. The case just argued is submitted for decision. The Court thanks counsel for their arguments. We'll move to the last case on the calendar, which is Gonzalez v. Yes on Proposition 200. Thank you. Thank you. Thank you.
judges: Schroeder, Noonan, Schiavelli